May it please the court, Guadalupe Ortega on behalf of Appellant Guillermo Eloy Alamos. Your honors, I would like to reserve two minutes for rebuttal and I will watch my time. Very well. Your honors, Mr. Alamos' case is about a defendant whose relationship with his attorney was so... You want to try to keep your voice up. Yes, your honor. Mr. Alamos' case is about a defendant whose relationship with his attorney was so irreparably damaged that he called his attorney a liar in open court over the course of two hearings. The communication between Mr. Alamos and his attorneys was so poor that his attorney scheduled a change of plea hearing when Mr. Alamos did not understand the basic elements of the charge of defense. Mr. Alamos did not plead guilty at that hearing. He renewed his request for new counsel, having just moved to substitute counsel a few days earlier. The court denied his request as it had done previously, but in doing so it failed to conduct a meaningful inquiry regarding Mr. Alamos' complaints. But what about the second hearing? Wasn't that sufficient? Your honor, at that hearing Mr. Alamos renewed his complaints and they were the same and the court did not explore the nature of Mr. Alamos' complaints that his counsel was being dishonest and they were not communicating. He instead renewed his same conclusion that Mr. Alamos was simply upset about the fact that the fast track plea agreement had expired when in reality Mr. Alamos was raising more fundamental concerns about his relationship between himself and his attorney. What's your best case to support your theory here? Your honor, I would cite United States v. Moore because that case contains some factual comparisons to this case and the defendant in that case was also upset about the fact that he perceived his attorney was not competently negotiating the plea agreement and for that reason the communication between them started breaking down. He requested new counsel and the district court denied that request and this court held that that was an abuse of discretion. Your honor, in Mr. Alamos' case specifically there were two hearings as your honor mentioned and at both hearings he stated that he and his attorney were not communicating that he thought his counsel was dishonest and that his counsel was not competently negotiating a plea agreement because he told him that he could get him a better offer than the fast track plea agreement and when that did not come to pass he felt his attorney was not telling him the truth about what his case prospects were. And in determining whether the district court abuses discretion, your honors, this court has set out a three part test that begins with first the adequacy of the inquiry conducted by the district court and in this case the district court asked very few questions about the nature of Mr. Alamos' concerns. He raised the concerns at a second hearing, your honors, as I mentioned before and the fact that he raised them at a second hearing should have been a signal to the court that it had not reached the root of what the complaint Mr. Alamos was raising had been at the first hearing. At the second hearing it reestablished its basis for denying the motion at the first hearing and said that Mr. Alamos was simply upset about the plea agreement having been expired. What the record reflects, your honors, is that Mr. Alamos and the district court were really having two separate conversations because once the district court determined that it thought that the root of the problem was simply dissatisfaction with the plea agreement, it didn't listen to Mr. Alamos' concerns about his attorney's dishonesty or his claim that his attorney was dishonest, his perception of that fact and the communication problems that Mr. Alamos said he was having with his attorney. Assuming that we agree with you on the communication, don't you have a more difficult problem? Doesn't his prior offense constitute a drug trafficking offense under the sentencing guidelines? I mean, you cited to Rios, Vidal versus Gonzalez, but the definition of a drug trafficking offense for the purposes of the sentencing guidelines differs from the definition of illicit trafficking of a controlled substance for the purposes of immigration. What is your response to that? My response to that, your honors, is that the sentencing guidelines do not define what a controlled substance is and the prior decisions of this court have ruled that California's drug schedules are broader than the federal schedules and where there is no definition in the sentencing guidelines for the phrase controlled substance, we use the federal definition because that's more consistent with the underlying logic of Taylor, which is we want to create a uniform definition of what trafficking in a controlled substance is, rather than allowing the various disparate definitions of 50 states to determine what a controlled substance is and in that sense creating different standards for how people are sentenced in different states. But you have no case to support your theory, do you? Well, your honors, I cited in my brief Sanchez Zarate, which is an unpublished disposition by this case that occurred last year and in that case the district court applied Reese Vidal, which is the primary case I applied, and in that case it appears that the court assumed or ruled that 11351 is overbroad and then went on to apply the modified categorical approach. Can I ask you a question? Yeah. If we agree with you on issue number one, the case is remanded for a new trial and an appointment of new counsel, is that the result? That's correct, your honor. If the court agrees with us on that issue, then the sentencing issues become removed, I believe, yes. How about this? There was a fast-track policy in effect at the time? Correct, your honor. How did that work? The way it worked, your honor, the fast-track policy itself, if the defendant entered a fast-track plea agreement offered by the government, he would obtain a four-level reduction in his sentencing deadline's offense level. But how was it presented, in writing or orally by the assistant U.S. attorney to the FPD? What happened here? Your honor, typically what happens, based on my review of the record, I was in trial counsel, but I think what happened is the U.S. attorney offered a written plea agreement containing a fast-track disposition, and yes, that was in writing, that was given to the defendant. What did that say? Your honor, the fast-track plea agreement said that, you know, assuming defendant pled guilty... Right now. Right now, then, sorry, your honor, then the U.S. attorney would return, the U.S. attorney's obligation would then be to move for a four-level reduction. Would ask for a four-level reduction. Correct, your honor. And what was the time limit? Your honor, I believe it was two weeks. I'll check my notes again once I, when I do rebuttal, I'll confirm that. But I believe, and it's typically, I think that's typically what the case is. Well, that isn't being done now, is it? Yes, your honor, fast-track plea agreements are still being offered. Do you want to save a minute and 33 seconds? Yes, your honor, thank you. We'll hear from the U.S. attorney's office. Good morning, your honors. May it please the Court. Jennifer Williams, appearing for the United States. And, your honor, I could perhaps just start with a question that you had about the fast-track. Of course, the plea agreement is not in the record, but in the government's excerpts of record. There's a stipulation wherein the parties agreed to push back the post-indictment arraignment to give the defendant time to consider the fast-track plea agreement that the government had offered. Typically, what happens in fast-track plea agreements is that indictment is waived, preventing 30 days for the defendant to consider the offer. I'd really like to know because they vary. Places like San Francisco, the practice was, and no longer is, that the U.S. attorney's office would present a letter to defense counsel telling defense counsel that if his client would come in and enter a guilty plea and waive the right to a jury trial and all the rest of it, and waive the right to appeal, that they would recommend a sentence of five years. But if it wasn't accepted within 48 hours, or three days, or whatever it was, that they would come back with a superseding indictment, and then the minimum that they would recommend would be 10 years. You see, the pressure is on. Now, did that happen here? See, that's what I, because this was quite common and no longer is. Well, I was not the charging AUSA, so I'm going by what was on the record and also my experience with fast-track. Here, the defendant was arrested on December 21st, and he had his initial appearance on that day. From my experience, the defendant is presented with a plea agreement at the time of his initial appearance. Well, where's the agreement? Do we have it? We don't have the plea agreement in the record. Why? It was not offered as an exhibit at any point of time because this conflict with his plea agreement was only offered by way of the defendant's complaints. And the defendant's complaint is exactly that, not that he was unable to communicate with his counsel, but because he wanted the terms of the fast-track plea agreement again, and he was under the misimpression that having new counsel appointed would alleviate that problem for him. Well, he said he wasn't told by his counsel that here was this, he said his counsel didn't advise him about this deal that was in the offing. And then the time limit went by, and then the ante doubled. Well, he stated that he was advised of the fast-track plea offer, but that his counsel also advised that he could get him a better deal than the fast-track plea offer. And the defendant, therefore, did not accept the fast-track plea offer. The indictment was then filed because under the fast-track, it's by way of information. So once the indictment is filed, that triggers the prohibition on the fast-track plea agreement from the U.S. Attorney's Office. At that point, I received the case, and although not directly in the hearings, where the court was conducting its inquiry through the transcript, was able to see that the real conflict lay with this defendant not wanting to really accept the circumstances with which he was faced, and that he no longer had the fast-track plea agreement. What were the inquiries that the trial court made to determine that? I understand you've argued that the overall impression, and it's obvious the judge had an overall impression, that that's what the dispute was about. But what targeted, specific, detailed inquiry did the trial court make as a defendant and his counsel? Yes, Your Honor. The first hearing occurred on March 1st, and at that time when the defendant made his complaint, the court initially provided a background, which I imagine the district judge often does to give the defendant just some legal knowledge as to what the standard is in this case. At that point, the judge left the bench and then came back and inquired of the defendant at that time. At that time, the district court also inquired. What inquiry did the court make? You give me, when you say the court made an inquiry, what inquiry did the court make? What date was this? This was March 1st. March 1st. Yes. And the court, on March 1st, the court didn't specifically ask a question. The court gave the background and then gave the defendant a chance to be heard, having heard that background. The court did specifically ask defense counsel at that time, this is on page 6 of the excursive record, counsel, do you want to be heard? And defense counsel at that time said, no, Your Honor. The court then said, let me know if there's anything else you want to address to the court. The defendant said, thank you very much, Your Honor. So the judge did not ask any questions. Not specific questions at that time. However, at the next hearing, a couple of days later on March 5th, the court specifically, after dismissing the government counsel, asked the defendant specifically, tell me what happened between the last hearing and today. And the defendant stated that he had communicated with his counsel several times, that they had talked after the prior hearing. The defense counsel came to the jail to visit him. The defense counsel had also been in communications with his wife. The court then, again, patiently explaining to him what the process is and that the plea agreement is offered by the government and that defense counsel has an obligation to convey that. The court confirmed through defense counsel that all offers had been conveyed to the defendant. The court went on to ask the defendant, what would you like your defense counsel to tell you? Just recognizing what the conflict is. And then he asked him a question, and his attorney invoked the attorney-client privilege against his client. That's correct. And the judge, do you think that that is a legitimate invocation of the attorney-client privilege, that an attorney can invoke that privilege against his client? Well, I think the client can waive the attorney-client privilege. Well, I would think that asking him the question might be a way. I agree with Your Honor. And I think, honestly, what defense counsel was trying to do is not create a conflict between himself and his client. I think the defense attorney didn't want to be calling his client a liar in front of him. No, no, no. I don't read it that way. He was just trying to cover his own tracks, you know, the way I read it. I've never heard an attorney respond in that way when the client addresses him. He says, well, I don't want to violate the attorney-client privilege. And, Your Honor, that's a reasonable interpretation as well. I think that really the block to defendant's claim here isn't whether they weren't communicating, though. The standard is whether there's been a breakdown in communication. And at that point, the defendant may have been upset where he was in the case and the fact that he didn't have the plea agreement presented before him again. But a new attorney at that point was not going to increase the amount of communication. They were having communication just fine. And the inquiry conducted by the district court. The problem is the system is rotten, see. When you go to a defendant and you say, these are not the most sophisticated people in the world. Somehow they told, well, here it is. Waive all your rights to appeal and jury trial. If you do go to trial, we're going to punish you even though it's a constitutional right. We don't like people to exercise their constitutional rights. And you've got this much time to fish or cut bait. And if you don't do it, boom, it's going to double. Five years. What were they going to give him here? The sentencing guideline range would have been 30 percent. No, not the guideline range. What was he offered? What was he offered? The offer would have been 30 to 37 months. Yeah. And what did he get? 60 months. 60. It doubled. Yeah, it doubled. So all that pressure is put on him. And he says, well, he had a breakdown of communication with his lawyer. And the lawyer said, well, I can get you a better deal than that. So the lawyer was wrong, and so who pays the price? Well, I think that it is very difficult to be a defense attorney. And it takes some time to build trust and a relationship. But the Fast Track program is there for a reason, I would submit. And by allowing the Fast Track offer to stay open and then going through the grand jury process, it's slowly whittling away at this program that I think everybody benefits from. How does everybody benefit from it? Well, the defendants. The people who run the jails benefit from it. How do the rest of us benefit from it? I think that my time has expired, but if I can go. I can give you more time just the way you do. Thank you. I want to get away from that tough question. Your Honor, I understand what you're saying. But I think that without the program, the defendants are always going to be faced with the guidelines that the defendant was faced with in this case, which was 77 months. Well, the guidelines are unconstitutional to begin with, aren't they? The Supreme Court has said that. Well, the advisory guidelines. The guidelines are unconstitutional, but go ahead and use them anyway. And I think that there is a benefit to using the guidelines to have some consistency among the courts, but that would be a discussion. It hadn't worked out that way. I realize I didn't get into the 11351, and I'll submit on the briefs unless Your Honors have any questions. Thank you. Your Honors, the district court really made no targeted inquiry of the defendant at the first hearing, and I think the government has conceded that in its response to Your Honors' questions. With regards to the second hearing, the record does reflect that Mr. Alamos and his attorney did talk between the hearings, but it doesn't reflect that they communicated, because at the second hearing Mr. Alamos' concerns were exactly the same. He thought his counsel was dishonest. He thought that they weren't communicating and that they were not seeing eye to eye, and I think this evidence is a breakdown of communication. And one other point, Your Honors, that the problem didn't end with the issue of the fast track. Once the motion to substitute counsel was denied, the defendant was now faced with resolving the case either by going to trial or finding some other disposition with an attorney he thought was dishonest, an attorney he didn't trust, and an attorney he repeatedly told the district court that he didn't communicate with. Well, if the judge had asked him specific questions and had elicited what the judge thought was the case, which was that the defendant was just unhappy that he couldn't get a better deal than was offered to him, and that that's what he characterized as poor communication or dishonesty or lying, would that be enough to get substituted counsel? I think that would evidence a breakdown in the relationship between Mr. Alamos and his attorney,  Your Honor. And I believe that's my time, Your Honor. Thank you. Is this practice still going on? Burr, are you in Santa Ana? Yes, Your Honor. Yes, the fast track program is still in place, Your Honor. Thanks. Well, we go to the next matter. That's item four in our calendar. United States versus Chavez-Gonzalez.
judges: Lynn, Pregerson, Nelson